NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250313-U

NO. 4-25-0313

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 4, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Logan County |
| Petitioner-Appellee, | ) | No. 24JA22 |
| v. | ) | |
| Nicole R., | ) | Honorable |
| Respondent-Appellant). | ) | Jonathan C. Wright, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Vancil and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding the trial court did not abuse its discretion when it placed custody of the minor with the Illinois Department of Children and Family Services.

¶ 2    Respondent, Nicole R., challenges the trial court's dispositional order, arguing the court erred when it placed custody of her minor child, K.H. (born July 2019), with the Illinois Department of Child and Family Services (DCFS). She asks this court to reverse the dispositional order to the extent it placed custody of K.H. with DCFS and remand with directions to return custody of the minor to her while maintaining guardianship with DCFS. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On November 21, 2024, the State filed a petition for adjudication of wardship of K.H. Count I alleged that K.H. was neglected pursuant to section 2-3(1)(b) of the Juvenile Court

Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)) due to being in an environment injurious to his welfare, as evidenced by domestic violence in the minor's home. Counts II and III alleged K.H. was abused pursuant to sections 2-3(2)(i) and (v) of the Juvenile Court Act (705 ILCS 405/2-3(2)(i), (v) (West 2024)) in that respondent and/or her paramour, Chahari D., inflicted (1) physical injury by other than accidental means on K.H., which caused impairment of his physical or emotional health and (2) excessive corporal punishment on K.H. An amended petition containing the same counts was filed on January 2, 2025.

¶ 5                              A. Temporary Custody Hearing

¶ 6        On November 21, 2024, the trial court held a temporary custody hearing. Stefanie Moreau, a DCFS child welfare specialist, testified she received a report from K.H.'s school on November 13, 2024, alleging K.H. had multiple bruises and red pattern marks on his back. Later examination revealed the injuries were indicative of shoe stomping. K.H. also had bruising resembling loop marks on multiple areas on his left arm and a linear bruise across his right buttocks. When Moreau spoke with K.H., he told her that respondent and Chahari would spank him with either a hand or a belt, and both would "pop him in his mouth." He reported, when Chahari spanked him, it was "hard."

¶ 7        Moreau later interviewed respondent in the principal's office. Respondent stated she gave K.H. a bath two days before and denied seeing any marks or bruises on him at that time. She also told Moreau there had been a prior investigation involving K.H. by the Arizona Department of Child Safety (ADCS), but that case was closed. Moreau called the Arizona office and confirmed the case was still open and pending. The Arizona investigation was opened on August 8, 2024, and respondent, Chahari, and K.H. moved to Illinois on August 11, 2024. After the interview, K.H. was taken into protective custody and placed with his maternal grandparents.

¶ 8          During a forensic interview conducted by the Pediatric Resource Center, K.H. did not make a formal disclosure. K.H. stated "he can't talk about it" and it was a "secret." He also "blurted out" that respondent did not know about the injuries on his back. Moreau testified respondent later went to the police and told them she had given Chahari permission to physically punish K.H. over the past two years.

¶ 9          Respondent testified she had seen the bruising on K.H.'s arm, but not on his back. She admitted to giving Chahari permission to physically punish K.H. and she did not tell the police at first because she was "really scared to tell them everything." Respondent explained she went to the police to report Chahari after "a lot of people" told her K.H.'s injuries had "to be some kind of abuse." Thereafter, the trial court found there was an immediate and urgent necessity to remove K.H. from his home and granted temporary guardianship and custody to DCFS.

¶ 10          At a January 2025 adjudicatory hearing, respondent admitted count I of the petition. The State dismissed the remaining claims in the petition, and the trial court adjudicated K.H. neglected.

¶ 11          B. Dispositional Report

¶ 12          In February 2025, a dispositional report was filed. The report was completed by Autumn Mayberry, a DCFS child welfare specialist. The report included two prior incidents involving K.H. that were investigated by ADCS. First, in August 2024, K.H. was observed during school lunch to have handprint-shaped bruises on his thigh and bruises on his lower ankle, midback, and between his legs. The bruises were both fresh and in different stages of healing. He also had a " 'rod like' " injury on the left side of his head, which appeared as a three-inch abrasion from his hairline down to the bottom of his left ear, and small cuts on his left thigh and midback. K.H. complained of back pain. He became quiet when asked about the bruising, but he did not

mention he was fearful of going home. When asked about the injuries, respondent explained K.H. was clumsy and she was unaware of the bruising. The final finding of this report was unknown, as respondent and K.H. moved to Illinois during the investigation. Second, in July 2019, respondent was indicated "founded of neglect in Arizona" because (1) she tested positive for cannabis when giving birth to K.H. and (2) K.H. was diagnosed with fetal alcohol effects.

¶ 13　　　A December 31, 2024, integrated assessment recommended respondent complete parenting education, participate in individual therapy, and potentially engage in family therapy with K.H. The report indicated respondent signed all the necessary releases of information for her service providers. Respondent attended weekly visits with K.H., where she demonstrated appropriate parenting skills, provided suitable meals for the minor, and otherwise followed the visitation rules. She had begun counseling through Memorial Behavioral Health and was referred to The Parent Place to complete a parenting assessment.

¶ 14　　　The report concluded the prognosis for K.H. to be reunited with respondent was poor and she did not adequately show protective measures to protect the minor. It was recommended that custody and guardianship of K.H. be granted to DCFS.

¶ 15　　　　　　　　　　　　C. Dispositional Hearing

¶ 16　　　In March 2025, the trial court held a dispositional hearing. We note the transcript indicates the beginning of the hearing was not recorded.

¶ 17　　　Mayberry testified K.H. completed an assessment for trauma-based therapy. He also had upcoming appointments for a sleep study, an autism assessment, and neurological diagnostic testing. When asked if she had any reason to believe respondent would have issues protecting K.H. in the future, Mayberry responded, "I don't think so." Mayberry stated, although respondent had not taken adequate safety measures initially, she now believed respondent

understood what had happened to K.H. and would be more cautious in protecting him in the future. She noted respondent still needed to complete services.

¶ 18 Mayberry testified there was no evidence respondent committed the abuse against K.H. She conducted a home visit and found respondent's home was appropriate. During visitation, respondent behaved appropriately with the minor. K.H. appeared happy with respondent and was sometimes reluctant to leave at the end of the visit. Mayberry confirmed respondent was cooperating with DCFS, was in the process of completing her services, and had adequate housing and gainful employment. Mayberry stated her remaining concerns were the unanswered questions relating to the abuse in the current case and the unexplained bruising on K.H. in the Arizona case. Although Mayberry found the prognosis for reunification was poor in the dispositional report, she stated this finding could change once respondent completed her services.

¶ 19 Respondent testified on her own behalf. She stated the Arizona investigation was initiated when K.H.'s school found bruising on his inner thigh and ankle. She and K.H. were living with Chahari at the time. Respondent asserted the case was closed and she never heard from ADCS again after she cooperated with a home visit and questioning. She denied having any knowledge that Chahari was physically abusing K.H. prior to the instant case. Respondent explained she asked K.H. after the Arizona report whether Chahari was hurting him, and K.H. told her "no." She said she did not suspect Chahari because K.H. "was also very *** loving toward Chahari."

¶ 20 Respondent initially believed the bruising was from other causes, such as K.H. throwing a fit in his bed or falling. She stated she knew Chahari had spanked K.H., but at the time, she did not believe the bruising came from him. However, after speaking with her father, she began to suspect Chahari and called the police to report the abuse. Respondent immediately broke up with Chahari, and he was later arrested. After he was released with an electronic ankle monitor,

respondent unsuccessfully sought an order of protection against Chahari. Thereafter, Chahari moved out of respondent's home and her only contact with him was at court. Respondent believed she and K.H. both needed to continue counseling.

¶ 21    The State recommended K.H. be made a ward of the court and his guardianship be placed with DCFS. However, the State further recommended respondent be found fit, able, and willing to care for K.H. and K.H. be returned to her custody. The State did not find any evidence that anyone other than Chahari physically abused K.H. The State noted respondent still needed to complete her services. Respondent and the guardian *ad litem* (GAL) agreed with the State's recommendation.

¶ 22    The trial court stated it considered the evidence, the dispositional report, and the recommendation of the parties. The court found it was in the best interest of K.H. to be made a ward of the court. The court further found respondent unfit for failing to protect K.H. In support of its ruling, the court cited the finding of neglect against respondent in 2019 and the unresolved 2024 investigation in Arizona. In particular, the court noted respondent's testimony at the dispositional hearing regarding K.H.'s injuries in 2024 contradicted the dispositional report, which described much more extensive injuries and bruising. The court also expressed concern with respondent moving to Illinois while the Arizona investigation was pending with no explanation as to why she moved. Due to the extent of the bruising on K.H., the court found respondent was not credible when she testified she was not aware of any abuse. The court found removal of K.H. was necessary for his health, safety, and welfare and placed custody and guardianship of the minor with DCFS.

¶ 23    This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25　　　　On appeal, respondent argues the trial court erred when it placed custody of K.H. with DCFS. Specifically, she argues K.H. should have been returned to her custody, as she had made meaningful progress on her services, she posed no immediate or present safety threat, and the State, DCFS, and the GAL all supported reunification under DCFS's supervision.

¶ 26　　　　Once a trial court adjudicates a minor neglected, the court must hold a dispositional hearing. 705 ILCS 405/2-21(2) (West 2024). At the dispositional hearing, the court determines whether (1) it is consistent with the health, safety, and best interest of the minor and the public that the minor be made a ward of the court and (2) the parent is unfit, unwilling, or unable to care for the minor. 705 ILCS 405/2-21(2) (West 2024); *In re M.M.*, 2016 IL 119932, ¶ 21. If a parent is found unfit and the court determines the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents, the court may place custody and guardianship of the minor with DCFS. 705 ILCS 405/2-27(1)(d) (West 2024). The paramount concern when selecting a dispositional order is the best interest of the child. *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011).

¶ 27　　　　A trial court's dispositional order "will be reversed only if the findings of fact are against the manifest weight of the evidence or the court committed an abuse of discretion by selecting an inappropriate dispositional order." (Internal quotation marks omitted.) *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41. Respondent's argument, while referring to the manifest-weight standard, challenges only the custody determination in the dispositional order. As such, this court will address whether the trial court abused its discretion. "A trial court abuses its discretion when no reasonable person would agree with its decision." *M.P.*, 408 Ill. App. 3d at 1073. We afford great deference to the court's dispositional findings, as "it is in a better position to observe the witnesses, assess credibility, and weigh the evidence." *Al. S.*, 2017 IL App (4th) 160737, ¶ 41.

¶ 28          Our review of the record shows the trial court did not abuse its discretion by placing custody of K.H. with DCFS. At the dispositional hearing, the evidence demonstrated respondent was cooperating with DCFS and attending visits with K.H., and she had adequate housing and employment. However, respondent continued to deny any knowledge of the abuse prior to the most recent report to DCFS, despite extensive bruising and injuries on K.H.'s body and previous reports of excessive bruising on the minor in Arizona. She also downplayed the extent of the injuries on K.H. that were found during the Arizona investigation a year prior. Further, respondent continued to insist the Arizona investigation was closed, but when Moreau contacted ADCS, they informed her the case was still open and pending. As noted by the court, respondent moved to Illinois with K.H. and Chahari, the alleged perpetrator, mere days after the Arizona investigation was opened, and no reason was given for why the move occurred at that time.

¶ 29          Although it appears respondent is making progress with the required services and visitation, the record shows she persisted in minimizing her role or not being entirely forthcoming about K.H.'s injuries in both the Arizona and Illinois cases. This provided a reasonable basis for the trial court to conclude that granting custody to respondent at that time was not in K.H.'s best interest. Accordingly, we find the court did not abuse its discretion by placing custody of K.H. with DCFS.

¶ 30                                      III. CONCLUSION

¶ 31          For the reasons stated, we affirm the trial court's judgment.

¶ 32          Affirmed.